UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
EVAN MARMER,

        Plaintiff,

  -against-

CAROLYN W. COLVIN,
*Acting Commissioner of Social Security*,

        Defendant.
----------------------------------------------------------x

**MEMORANDUM AND ORDER**
13-CV-2787 (FB)

*Appearances*

| For the Plaintiff: | *For the Defendant:* |
|---|---|
| HAROLD SKOVRONSKY, ESQ. | LORETTA E. LYNCH, ESQ. |
| 1810 Avenue North | United States Attorney |
| Brooklyn, NY 11230 | Eastern District of New York |
|  | 271 Cadman Plaza East, 7th Floor |
|  | Brooklyn, NY 11201 |

**BLOCK, Senior District Judge:**

    Evan Marmer ("Marmer") seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Both parties move for judgment on the pleadings. For the reasons stated below, the Commissioner's motion is denied, Marmer's motion is granted, and the matter is remanded for calculation and payment of benefits.

I

    On June 24, 2010, Marmer applied for DIB, alleging disability since January 1, 2001 due

to back pain, spondylolisthesis,[1] and borderline intellectual functioning. The Social Security Administration denied his claim. Upon Marmer's request, an Administrative Law Judge ("ALJ") conducted a hearing and also denied his claim. Following an appeal of the ALJ's determination, the Appeals Council denied his request for review, rendering final the Commissioner's decision to deny benefits. Marmer timely sought judicial review.

The relevant evidence proffered at the hearing before the ALJ is summarized below.

**A. Medical Evidence**

*1. Treating Physician Dr. Ilya Bilik*

Dr. Ilya Bilik has treated Marmer for his general medical care since 1994. He referred Marmer for an MRI which revealed posterior disc bulges impinging on the anterior spinal canal at L3-4 and L4-5 as well as spondylosis, disc herniation and facet joint hypertrophy at L5-S1. Dr. Bilik completed a Medical Source Statement dated March 21, 2011. He opined that Marmer could occasionally lift less than ten pounds, stand and/or walk less than two hours per day, and sit for less than six hours per day. He noted that Marmer had limitations in pushing and pulling with the lower extremities; that he could "never climb, balance, kneel, crouch, crawl, or stoop," AR at 220; and that he had environmental limitations with respect to "temperature extremes, noise, dust, vibrations, humidity/wetness, hazards, and fumes, odors, and gasses." AR at 222.

---

[1] Spondylolishtesis is the forward displacement of one vertebra over another, usually due to a developmental defect. DORLAND'S ILLUSTRATED MEDICAL DICT., 1743 (30th ed. 2003).

2

*2. Consultative Examiner Dr. Robert Dickerson*

At the request of the Commissioner, Dr. Robert Dickerson examined Marmer on August 19, 2010. Marmer's musculoskeletal examination revealed normal ranges of motion of the cervical and lumbar spines as well as the extremities. Dr. Dickerson diagnosed low back pain with spondylolisthesis, bronchitis, and hypertension. He opined that Marmer was "unrestricted for any physical activity." AR at 199.

*3. Consultative Examiner Dr. Jerome Caiati*

Dr. Jerome Caiati examined Marmer on May 9, 2011, at the request of the Commissioner. Dr. Caiati diagnosed him with obesity, hypertension, history of bronchitis, history of lumbosacral spondylosis, herniated discs and degenerated discs. Dr. Caiati also completed a Medical Source Statement based on his finding. On this form, Dr. Caiati checked boxes indicating that Marmer could perform the following activities: shopping, preparing a simple meal, taking public transportation, sorting and handling files, walking a block at a reasonable pace on rough or uneven surfaces, and climbing steps at a reasonable pace. *See* AR at 232. He noted that Marmer could sit, stand, and walk for a total of six hours each during an eight-hour workday. He found that Marmer could lift and carry up to fifty pounds occasionally and twenty pounds frequently. He opined that Marmer had "no restrictions for sitting, standing, walking, reaching, pushing, and pulling," AR at 225, but that due to back pain, he had "limitation[s] [in] bending, climbing, and lifting." AR at 226.

*4. Consultative Examiner Dr. John Lawrence Miller*

At the Commissioner's request, Dr. John Lawrence Miller conducted intelligence

3

testing on August 22, 2011. Marmer reported to Dr. Miller that he had completed high school and attended two years of college in a special education program. Marmer's IQ testing produced the following scores: 68 for verbal comprehension, 79 in perceptual reasoning, 71 for working memory, 86 in processing speed, and a full scale score of 71. He stated that Marmer's test results "appeared to be consistent with cognitive problems," but "did not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." AR at 13. He opined that Marmer "is likely to have significantly more trouble than most people in learning new tasks" and that his "difficulties appear to be caused by cognitive deficits." AR at 238. He noted that Marmer could make simple decisions so long as they were not complex. He recommended vocational training and rehabilitation, "but only to the point that would be consistent with his cognitive deficits and very significant medical problems." AR at 238. He further noted that Marmer would need assistance "to manage his own funds due to cognitive deficit." AR at 238.

**B. Marmer's Testimony**

Marmer testified that due to severe back pain and pulmonary disease, he is unable to work. He stated that he has never married and has no children. When asked whether he has friends or family that he meets with or gets together with, he responded that he has "a neighbor downstairs" with whom he does "tenant patrol" in his apartment building twice weekly. AR at 39. He lives with and is supported by his mother. He does not have a driver's license, but can navigate public transportation "only when [he] need[s] to." AR at 38. He goes outside only a few times per week, stating that "if the weather's nice [and] there's a bench

outside." AR at 38. He stated that "[his] mom is helping [him] out with mostly everything." AR at 37.

**C. The ALJ's Decision**

In a decision dated March 29, 2012, the ALJ concluded that Marmer was not disabled because he retained the residual functional capacity to perform light work, with several limitations. *See* AR at 14. Applying the first three steps of the sequential five-step evaluation process, the ALJ found that: (1) Marmer had not engaged in substantial gainful activity since June 24, 2010; (2) his conditions of obesity, lumbar spondylosis, and borderline intellectual functioning, qualified as severe impairments; and (3) his back impairment did not qualify as a listed impairment under 1.04 and his mental impairment did not meet or medically equal the criteria for a listed impairment under 12.05. With respect to Listing 12.05(C), the ALJ found that Marmer's mental impairment did not meet the requirements of that section. Despite Marmer's verbal comprehension score of 68, the ALJ concluded that "the claimant does not have a valid, verbal, performance, or *full scale* IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." AR at 13 (emphasis in original).

The ALJ then found that Marmer had the residual functional capacity to perform light work except that

> the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently, he can stand and/or walk for six hours out of an eight-hour workday with regular breaks; can sit for 6 hours out of an eight-hour workday with regular breaks; and can occasionally climb, balance, stoop, kneel, crouch and crawl.

> In addition, the claimant should avoid concentrated exposure
> to dusts, fumes, gases and other pulmonary irritants.

AR at 14.

The ALJ further found that "the claimant can understand, remember and carry out simple instructions, maintain attention and concentration for simple tasks and can tolerate only low stress work, namely, work including only occasional decision-making and judgment, occasional changes in work setting, procedures and tools, and occasional interaction with co-workers and the general public." AR at 14.

Applying that RFC to the remaining two steps, the ALJ found (4) that, although Marmer had no past relevant work, he could (5) perform other work existing in significant numbers in the national economy. For example, a vocational expert identified three unskilled light jobs with SVPs[2] of two that Marmer could perform: assembler of small products, marker, and machine tender—all with a significant number of positions existing locally and nationally.

## II

"In reviewing the final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). "Substantial evidence" refers to "such relevant evidence as a reasonable mind might accept as adequate to support a

---

[2] "SVP" refers to specific vocational preparation, which is the amount of time required to learn a job. The SVP ranges from 1, the shortest time in which a job can be learned, to 9, meaning that more than ten years training are required to learn the job. U.S. DEP'T OF LABOR, SELECTED CHARACTERISTICS OF OCCUPATIONS DEFINED IN THE DICT. OF OCCUPATIONAL TITLES, Appendix D, 473 (1981).

conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In determining whether substantial evidence supported the agency's findings, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."

Marmer takes issue with the ALJ's determination at step three, principally arguing that the ALJ erred by finding that his borderline intellectual function did not qualify as a listed impairment under 12.05(C). Marmer contends that he is disabled under 12.05(C) due to mental retardation. *See* § 12.05 of the Listing of Impairments, 20 C.F.R. Pt. 404, Subpart P, Appendix 1. In response, the Commissioner argues that despite Marmer satisfying the first two requirements of 12.05(C)—namely, the requisite IQ score and other physical impairment—that Marmer failed to establish that he has deficits in adaptive functioning and, therefore, is not per se disabled under Listing 12.05(C). *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983).

**A. Listing 12.05(C)**

For purposes of Social Security benefits, "[m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." *See* § 12.05 of the Listing of Impairments, 20 C.F.R. Pt. 404, Subpart P, Appendix 1. Mental retardation is established when one of four sets of criteria are met; at issue here are the criteria contained in Section 12.05(C), which requires (1) "[a] valid verbal, performance, or full scale IQ of 60 through 70;" (2) "a physical or other mental

7

impairment imposing an additional and significant work-related limitation of function;" and (3) "deficits in adaptive functioning that arise from [a claimant's] cognitive limitations." *Talavera v. Astrue,* 697 F.3d 145, 153 (2d Cir. 2012). A claimant who is found to meet these requirements is presumed disabled at step three without further inquiry. *See* 20 C.F.R. § 404.1520(a)(4)(iii).

The ALJ found, despite Marmer's verbal comprehension score of 68, that "[i]n terms of the requirements in [12.05] paragraph C, they are not met because the claimant does not have a valid verbal, performance, or *full scale* IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." AR at 13 (emphasis in original). The ALJ concluded that "there is no evidence of significant subaverage general intellectual functioning with deficits in adaptive functioning initially manifested prior to age 22." AR at 12-13. In this regard, the ALJ found that the "claimant successfully graduated from high school and attended two years of college" and further, that consultative examiner Dr. John Miller noted that Marmer's test results "appeared to be consistent with cognitive problems, but in itself, that [it] did not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." AR at 13.

Although the ALJ found that Marmer did not have the requisite IQ score and other physical impairment, the Commissioner wisely does not defend those two findings on appeal. *See* Def.'s Memorandum at 14 (stating that Marmer has the requisite I.Q. score and other physical impairment, but fails to meet the third requirement of 12.05(C)). Dr. John Miller found that Marmer's verbal IQ score was 68, which comports with the requisite standard that claimant must

8

have "a valid verbal, performance, or full scale IQ of 60 through 70." *See* § 12.05 of the Listing of Impairments, 20 C.F.R. Pt. 404, Subpart P, Appendix 1. Marmer is entitled to the presumption that his sub-average general intellectual functioning "initially manifested prior to age 22" because there is no evidence in the record indicating otherwise. *Talavera v. Astrue*, 697 F.3d 145, (2d. Cir. 2012) (providing that "it is reasonable to presume, in the absence of evidence indicating otherwise, that claimants will experience a "fairly constant IQ throughout [their] li[ves].")

Second, the ALJ determined that "[t]he claimant's condition produces limitations that meet this definition of 'severe.'" AR at 12. This Court has held that the correct standard for determining whether an impairment in addition to low IQ imposes a significant work-related limitation under Section 12.05(C) is the severity test. *Keitt v. Barnhart*, 2005 WL 1258918, *5 (May 27, 2005) (Block, J); *see also Baneky v. Apfel*, 997 F. Supp. 543 (S.D.N.Y. 1998). As the Commissioner now concedes, Marmer has the requisite "other physical impairment" and thus satisfies the second requirement of Listing 12.05(C). Def.'s Memorandum at 14.

Given that the first two 12.05(C) requirements are satisfied, the Court turns to the third requirement to determine whether Marmer meets the pivotal threshold requirement of having "deficits in adaptive functioning." Adaptive functioning refers to an individual's "ability to cope with the challenges of ordinary everyday life." *Talavera v. Astrue*, 697 F.3d at 153. Courts have enumerated examples of daily activities that evidence adequate adaptive functioning: successful education in regular classes as opposed to special education courses, living on one's own, taking care of children without help, paying bills and managing one's own finances, and engaging in productive social relationships. *Id.* at 153.

9

Marmer argues that he has the requisite deficits in adaptive functioning given that he does not live on his own, cannot manage his own finances, and has led an otherwise "rather barren life: special education; no significant employment or social activities; no marriage or children." Pl.'s Memorandum at 8. In response, the Commissioner contends that "despite having the requisite I.Q. score and other physical impairment, plaintiff does not meet the pivotal threshold requirement of having deficits in adaptive functioning, and therefore, his borderline intellectual functioning does not meet Listing 12.05." Def.'s Memorandum at 14.

The Court disagrees. In *Talavera*, the court found that the plaintiff did not have the requisite deficits in adaptive functioning. *Id.* at 153. There, Talavera meaningfully participated in the care of her two young children, she completed ten years of education in regular classes and attended a year of business training, she navigated public transportation without assistance, engaged in productive social relationships, managed her own personal finances, and exhibited a facility with the use of computers. *Id.* at 154.

Marmer's circumstances are distinguishable from those of the claimant in *Talavera*. Marmer can navigate public transportation, albeit "only when he has to," and he has taken care of his parents at times. That being said, he does not exhibit other characteristics consistent with adequate adaptive functioning. The ALJ emphasized that "the claimant successfully graduated from high school and attended two years of college." AR at 13. In so emphasizing, however, the ALJ failed to acknowledge that these were special—not regular—education classes. The ALJ noted that Marmer "stated that he had no problems getting along with others," construing his testimony as meaning that he has successful social relationships. AR at 14. The ALJ failed to

10

recognize, however, that when asked whether he has friends or family that he meets with or gets together with, Marmer responded that he has "a neighbor downstairs." AR at 39. In other words, he does not have meaningful relationships with friends and engages in no social activities other than participating in "tenant patrol" in his apartment building twice weekly. AR at 39. Also absent from the ALJ's decision was the consideration that Marmer has never married and has no children; that he lives with and is supported by his mother, and that he does not manage his own finances.

The ALJ emphasized Dr. Miller's opinion that Marmer's cognitive problems "did not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." AR at 13. Yet the ALJ failed to consider that Dr. Miller, the Commissioner's own consultative examiner, also opined that Marmer "is likely to have significantly more trouble than most people in learning new tasks." AR at 238. Although Dr. Miller recommended vocational training for Marmer, he did so "only to the point that would be consistent with his cognitive deficits and very significant medical problems." AR at 238. The ALJ failed to consider that Dr. Miller also opined that Marmer would need assistance "to manage his own funds due to cognitive deficit." AR at 238.

Based on the foregoing factual circumstances, the Court cannot conclude that substantial evidence supported the Commissioner's finding. Rather, substantial evidence in the record compels the opposite conclusion—that Marmer's mental impairment meets the requisite elements of Listing 12.05(C) and that, therefore, he is per se disabled under that section.

**B. Remand**

In short, the Court finds that the ALJ erred in her determination regarding Listing 12.05(C). If the Court can determine from the record whether "the limitations identified by plaintiff, beyond his low IQ, satisf[y] the second prong of Section 12.05(C)," the Court does not have to remand for the Commissioner to make a specific finding in that regard. *See Baneky v. Apfel,* 997 F.Supp. 543 (S.D.N.Y. 1998) (stating that if the Commissioner has already found that plaintiff's impairments are "severe" within the meaning of Section 404.1520(c), then plaintiff's requirements satisfies the requirements of Section 12.05(C) and he is entitled to disability insurance benefits). *Id.* at 546. Because the Court can determine from the record that Marmer satisfies the requisite elements of Listing 12.05(C), remand for further administrative proceedings is unnecessary. Thus, remand for the calculation and payment of benefits is the proper remedy. *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980) (stating that where "the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," the proper remedy is remand solely for calculation of benefits).

### III

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is denied, Marmer's motion is granted, and the case is remanded for calculation and payment of benefits.

**SO ORDERED.**  /S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
April 7, 2014